IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

RONALD HAYES,  )
              )
     Plaintiff, )
              )
v.            )  CASE NO. CV414-005
              )
LOWE'S HOME IMPROVEMENT, LLC, )
              )
     Defendant. )
              )

# ORDER

Before the Court is Defendant Lowe's Home Improvement, LLC's Motion for Summary Judgment. (Doc. 43.) For the following reasons, Defendant's motion is **GRANTED IN PART** and **DENIED IN PART**. As a result, Plaintiff's claims for retaliation are **DISMISSED** and Plaintiff's claims for employment discrimination shall proceed to trial.

## BACKGROUND

This case involves allegations of racial discrimination and improper retaliation in violation of both Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17, and 42 U.S.C. § 1981.[1] Plaintiff, an African-American male, began working for Defendant as a zone manager in 2003 at its Jacksonville, North Carolina location. (Doc. 65 at 3.) After

---

[1] As it must at this stage, the Court construes the facts in the light most favorable to Plaintiff. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).

successfully performing his duties at several stores in North Carolina, Plaintiff was selected in January 2011 to serve as the store manager for Defendant's Rincon, Georgia location. (Id.) After only two months, Plaintiff began sensing racial difficulties among the mostly white employees and customers. (Id.)

Based on this perception, Plaintiff attempted to resign in March 2011. (Id.) However, Mark Dorsey, a white male serving as the market director for the Rincon store, refused to accept Plaintiff's resignation. (Id.) Plaintiff agreed to stay based on Mr. Dorsey's and other former managers' encouragement and expressions of support. (Id.)

During Plaintiff's tenure as manager, the Rincon location received an award from the corporate office in recognition of its performance. (Id.) In February 2012, Plaintiff was personally recognized by Defendant's Chief Executive Officer at the annual national sales meeting. (Id. at 4.) The CEO praised Plaintiff's abilities and noted that Plaintiff's implementation of the MyLowe's program resulted in the Rincon location being one of the most successful stores with respect to that program. (Id.)

However, Plaintiff continued to deal with racial issues at the Rincon location. (Id.) For example, an African-American employee informed Defendant that, upon Plaintiff's arrival as

2

store manager, a white department manager stated that African-Americans were taking over the Rincon location. (Id.) White employees referred to Plaintiff as stupid, an idiot, and crazy. (Id.)

In August 2012, an employee overheard two white department managers refer to Plaintiff as the "head ni**** in charge." (Id.) Following corporate policy, Plaintiff forwarded the employee's report concerning the incident to the area human resources ("HR") manager, Chonda Pettigrew.[2] (Id.) Additionally, Plaintiff again informed Mr. Dorsey of the difficulties Plaintiff was having with assistant managers and Plaintiff's belief that the difficulty was due to their racial bias. (Id. at 4-5.)

A few weeks later, Plaintiff received his mid-year evaluation. (Id. at 5.) In this evaluation, Mr. Dorsey criticized Plaintiff's interactions with his assistant and department managers. (Id.) The mid-year evaluation was in stark contrast to the previous evaluation, provided only six months prior, which praised Plaintiff for his inspiration of others and ability to make the job enjoyable for his employees. (Id.)

Later that month, Mr. Dorsey transferred Plaintiff to the South Savannah location. (Id.) According to Plaintiff, Mr.

---

[2] Ms. Pettigrew is an African-American female. (Doc. 43, Attach. 1 at 4.)

3

Dorsey stated that the impetus behind the move was his belief that the South Savannah location would be a better fit for Plaintiff because it was more diverse. (Id.) Once again, Plaintiff successfully improved that location's performance. (Id.)

A few months later, an employee at the South Savannah location found in the hardware aisle a piece of rope tied in the shape of a noose. (Doc. 65, Ex. 2 ¶ 121.) Two weeks later, a second noose was found in the same area. (Doc. 65 at 6.) Plaintiff reviewed the incident with the store HR manager, ultimately informing Mr. Dorsey of his concern about the incidents and requesting a camera be installed to monitor that area. (Id.) Mr. Dorsey denied Plaintiff's request. (Id.)

On January 3, 2013, one day after the second noose incident, Plaintiff attended a meeting with Mr. Dorsey and Ms. Pettigrew. (Id.) At this meeting, Mr. Dorsey and Ms. Pettigrew criticized Plaintiff for reprimanding assistant store managers without first providing them adequate training. (Id.) According to Plaintiff, he had repeatedly trained those managers, gained Mr. Dorsey's permission to issue to reprimands, and received approval from the store HR manager concerning the language of the reprimands. (Id.)

Shortly after the January 3, 2013 meeting, Plaintiff received a written reprimand for his handling of a customer

4

complaint. (Id.) The customer wanted to review store video to determine whether one of the customer's employees had improperly used the company debit card to obtain cash. (Id.) Following corporate policy, Plaintiff would not permit the customer to review the video, but Plaintiff informed the customer that Plaintiff's review of the video established that the employee did receive cash from the debit card. (Id. at 7.) Despite recognizing that Plaintiff followed corporate policy, Mr. Dorsey issued the reprimand purportedly based on the manner in which Plaintiff interacted with the customer. (Id.)

In early February 2013, Dorsey decided to recommend Plaintiff's termination. (Id.) The regional HR Manager, Machell Mims,[3] reviewed Dorsey's recommendation and determined that one basis for the termination was false and the others insufficient to support termination. (Id.) Following her review, Ms. Mims informed Mr. Dorsey that she could not support his decision to terminate Plaintiff. (Doc. 43, Attach. 1 at 7-8.) Mr. Dorsey accepted this recommendation. (Id.)

A month later, however, Ms. Mims began investigating complaints against Plaintiff lodged by a vendor and an employee. (Doc. 65 at 7.) According to Plaintiff, similar complaints against white store managers typically did not result in an

---

[3] Ms. Mims is an African American female. (Doc. 43, Attach. 1 at 7.)

5

investigation. (Id.) Nevertheless, Ms. Mims interviewed approximately six of Plaintiff's employees, who provided her with mostly positive reviews. (Id.) Electing to focus on a few negative comments, Ms. Mims recommended to Mr. Dorsey that he terminate Plaintiff's employment. (Id.) On March 15, 2013, Plaintiff's employment with Defendant was ended.

After receiving a right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC"), Plaintiff filed suit in this Court. (Doc. 1.) In his complaint, Plaintiff brings claims for employment discrimination and improper retaliation, both in violation of Title VII and 42 U.S.C. § 1981. (Id.) In its Motion for Summary Judgment, Defendant argues that Plaintiff is unable to establish a prima facie claim of discrimination because Plaintiff fails to identify similarly situated white store managers who engaged in similar conduct, but were treated less harshly. (Doc. 43, Attach. 1 at 14.) Additionally, Defendant contends that it has articulated legitimate non-discriminatory reasons for Plaintiff's termination, which Plaintiff cannot establish as mere pretext. (Id. at 14-19.) With respect to Plaintiff's retaliation claims, Defendant maintains that Plaintiff did not engage in any protected activity, and is unable to establish a causal connection between the alleged protected activity and Plaintiff's termination. (Id. at 19-25.)

In response, Plaintiff points to several white store managers in the area that received similar complaints, but were not disciplined. (Doc. 65 at 21-25.) Additionally, Plaintiff offers several reasons that Defendant's non-discriminatory reasons are pretextual, including Plaintiff's past work history with Defendant and the general esteem in which he was held by the majority of his employees. (Id. at 14-21.) Finally, Plaintiff argues that his conversations with Mr. Dorsey concerning the racial tension at the Rincon store, as well as reporting the "head ni****  in charge" comment and noose incidents, are protected activities that are causally related to his termination. (Id. at 10-14.)

**ANALYSIS**

I. SUMMARY JUDGMENT STANDARD

According to Fed. R. Civ. P. 56(a), "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim of defense—on which summary judgment is sought." Such a motion must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.' " Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475

U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56 advisory committee notes).

Summary judgment is appropriate when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law governing the action determines whether an element is essential. DeLong Equip. Co. v. Wash. Mills Abrasive Co., 887 F.2d 1499, 1505 (11th Cir. 1989).

As the Supreme Court explained:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

Celotex, 477 U.S. at 323. The burden then shifts to the nonmovant to establish, by going beyond the pleadings, that there is a genuine issue as to facts that are material to the nonmovant's case. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmovant. Matsushita, 475 U.S. at 587-88. However, the

nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586. A mere "scintilla" of evidence, or simply conclusory allegations, will not suffice. See, e.g., Tidwell v. Carter Prods., 135 F.3d 1422, 1425 (11th Cir. 1998). Nevertheless, where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the Court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989).

II. PLAINTIFF'S RACE DISCRIMINATION CLAIMS

Plaintiff has brought race discrimination claims under both Title VII and 42 U.S.C. § 1981. However, there is no analytical difference between the two. See Bryant v. Jones, 575 F.3d 1281, 1296 n.20 (11th Cir. 2009). Therefore, the Court will treat them as one claim for the purpose of ruling on Defendant's motion.

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). A plaintiff may establish a claim of unlawful racial discrimination by presenting direct, circumstantial, or statistical evidence of discrimination. Earley v. Champion Int'l Corp., 907 F.2d 1077, 1081 (11th Cir.

9

1990). To assess a disparate treatment claim[4] based only on circumstantial evidence, such as Plaintiff's claim in this case, the Court must employ the framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Burke-Fowler v. Orange Cty., Fla., 447 F.3d 1319, 1323 (11th Cir. 2006). Under this test, a plaintiff must establish a prima facie case of racial discrimination by proving four elements: (1) he was a member of a protected class; (2) he suffered an adverse employment action; (3) similarly situated employees outside of the plaintiff's protected class were treated more favorably; and (4) he was qualified for the position. Cuddeback v. Fla. Bd. of Educ., 381 F.3d 1230, 1235 (11th Cir. 2004) (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000)).

If a plaintiff can demonstrate the elements of a prima facie case, then a burden of production falls to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. Alexander v. Fulton Cty., Ga., 207 F.3d 1303, 1336 (11th Cir. 2000). If the employer articulates a legitimate, non-discriminatory reason, the burden then shifts back to the plaintiff to demonstrate that the employer's stated

---

[4] Plaintiff's claim is one of disparate treatment—Defendant treated Plaintiff differently based on his race. See Raytheon Co. v. Hernandez, 540 U.S. 44, 52 (2003) (quoting Teamsters v. United States, 431 U.S. 324, 335 n.15 (1977)).

reason was a pretext for discrimination. Id. At this point, should the plaintiff fail to establish the presence of a genuine issue of material fact that the employer's reason was merely pretextual, then the employer is entitled to summary judgment in its favor. Cuddeback, 381 F.3d at 1235.

In its motion, Defendant disputes only one element of prima facie case: whether any similarly situated individuals outside of Plaintiff's protected class were treated more favorably. (Doc. 43, Attach. 1 at 13-14.) To determine whether an employee is similarly situated, the Court must look at whether both the plaintiff and the employee engaged in or were accused of the same conduct, but were disciplined by their employer in different fashions. Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999) (quoting Jones v. Bessemer Carraway Med. Ctr., 137 F.3d 1306, 1311 (11th Cir. 1998)). When assessing the similarity of employees subjected to discipline, the nature of the offenses necessitating discipline and the types of punishments meted out are the prime analytical factors. Id. In this circuit, both the quantity and quality of the comparator's misconduct must be nearly identical so that courts do not second guess an employer's human resources decision. Id. While "exact correlation is neither likely nor necessary, [] the cases must be fair congeners," Dartmouth Review v. Dartmouth Coll., 889 F.2d 13, 19 (1st Cir. 1989), overruled on other grounds by

Educadores Puertorriquenos en Accion v. Hernandez, 367 F.3d 61, 64 (1st Cir. 2004), to prevent "confusing apples with oranges," Maniccia, 171 F.3d at 1368.

In his response, Plaintiff points to Kevin Fischer, Robert Koenig, Joe D'Elia, Al Silver, Michael Daniel, Richard Carter, and Allen Kestner. (Doc. 65 at 22-25.) According to the record in this case, all these individuals are white store managers that were the subject of complaints made between June 2010 and February 2013. (Id.) Despite the complaints, these white store managers were not subject to any written reprimands, recommendations that their employment be terminated, or other discipline. (Id.) Taking the facts in the light most favorable to Plaintiff, this Court concludes that Plaintiff has identified similarly situated employees outside of Plaintiff's protected class that were treated more favorably.[5] As a result, Plaintiff has established a prima facie case of employment discrimination.

Because Plaintiff has established a prima facie case, the burden now shifts to Defendant to articulate a legitimate, nondiscriminatory reason for its decision to terminate

---

[5] Interestingly, Defendant did not even address this comparator evidence in its reply, instead focusing on its decision to replace Plaintiff with another African-American. (Doc. 67 at 1-2.) While possibly relevant at trial, Defendant's decision to hire another African-American store manager does not operate to conclusively establish that similarly situated individuals outside of Plaintiff's protected class were treated more favorably.

12

Plaintiff's employment. In this regard, Defendant cites the history of reprimands of, and complaints about, Plaintiff leading up to his termination. (Doc. 43, Attach. 1 at 14-19.) In response, Plaintiff points to his work history prior to 2012, including being recognized by the CEO at the annual sales meeting and receiving various performance based awards. (Doc. 65 at 20-21.) Additionally, Plaintiff offers reasons that purportedly tend to establish the reprimands and complaints as pretextual.

Specifically, Plaintiff states that he handled his reprimanding of the store assistant manager according to his training, after consulting Mr. Dorsey about the issue, and with the approval of the store's human resources manager. (Id. at 16.) With respect to the customer complaint, Plaintiff points out that Mr. Dorsey initially informed him that Plaintiff handled the situation properly. (Id. at 17.) Regarding the complaints made by Plaintiffs' employees, Plaintiff contends that Mr. Dorsey and Ms. Mims selectively cherry-picked negative statements from employee interviews they conducted. (Id. at 15-19.) According to Plaintiff, the overwhelming majority of those comments was positive. (Id. at 18.) Additionally, Plaintiff has presented deposition testimony of several employees who claim they never made the negative comments used by Mr. Dorsey and Ms. Mims to justify Plaintiff's termination. (Id. at 18-19.)

13

While it is inevitably for a jury to decide, the evidence presented by Plaintiff, if believed, calls into question the various incidents that Defendant cites as non-discriminatory reasons for Plaintiff's termination. If a jury were to accept this testimony, it would be entitled to find that Defendant manufactured the alleged reprimands and complaints as pretext for terminating Plaintiff because of his race. For this reason, the Court finds that Plaintiff has created a genuine issue of material fact that his termination was the result of race discrimination. Accordingly, Defendant is not entitled to summary judgment on this claim.

III. PLAINTIFF'S RETALIATION CLAIMS

Plaintiff has brought retaliation claims under Title VII and 42 U.S.C. § 1981. Similar to his race discrimination claims, there is no analytical difference between the two. See Goldsmith v. Bagby Elevator Co., 513 F.3d 1261, 1277 (11th Cir. 2008). Therefore, the Court will treat them as one claim for the purpose of ruling on Defendant's motion.

To establish a prima facie case of retaliation, a plaintiff must show (1) that he engaged in statutorily protected activity; (2) that he suffered a materially adverse action; and (3) that there was a causal connection between the two events. E.g.,

Little v. United Tech., 103 F.3d 956, 959 (11th Cir. 1997).[6] Should a plaintiff establish a prima facie case of retaliation, "the employer has the burden of articulating a legitimate non-discriminatory reason for the challenged employment decision." Id. The plaintiff must then demonstrate that the proffered non-discriminatory reason is mere pretext for the unlawful retaliation. Id. (quoting Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1287 (11th Cir. 1997)).

Title VII protects two types of activities that may form the basis of a retaliation claim. First, the participation clause provides protection for an individual who has filed a formal charge with the EEOC. 42 U.S.C. § 2000e-3(a); EEOC v. Total Sys. Servs., Inc., 221 F.3d 1171, 1174 (11th Cir. 2000). Second, the opposition clause protects activity that occurs prior to the filing of a formal charge, such as filing an internal complaint or informally complaining of discrimination to a supervisor. 42 U.S.C. § 2000e-3(a); Pipkins v. City of Temple Terrace, Fla., 267 F.3d 1197, 1201 (11th Cir. 2001) (citing Rollins v. Fla. Dep't of Law Enforcement, 868 F.2d 397,

---

[6] Title VII's anti-retaliation provision, 42 U.S.C. 2000e-3(a), provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made unlawful by [42 U.S.C. § 2000e], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

15

400 (11th Cir. 1989)). The Supreme Court has determined that the term "oppose," as used in this context, is to be given its ordinary meaning: " 'to resist or antagonize . . . ; to contend against; to confront; resist; withstand.' " <u>Crawford v. Metro. Gov't of Nashville & Davidson Cty., Tenn.</u>, 555 U.S. 271, 276 (2009) (<u>quoting</u> <u>Websters New International Dictionary</u> 1710 (2d ed. 1958)). Therefore, to engage in a protected activity a plaintiff must, " 'at the very least, communicate her belief that discrimination is occurring to the employer,' and cannot rely on the employer to 'infer that discrimination has occurred.' " <u>Demers v. Adams Homes of Nw. Fla., Inc.</u>, 321 F. App'x 847, 852 (11th Cir. 2009) (<u>quoting</u> <u>Wedd v. R&B Holding Co.</u>, 992 F. Supp. 1382, 1390 (S.D. Fla. 1998)).[7]

In this case, the record is devoid of any evidence that Plaintiff opposed an unlawful employment practice. Plaintiff's own description of the events falls far short of anything that could be considered opposition. According to Plaintiff, he "<u>mentioned</u> to [Mr.] Dorsey that he suspected that he was having trouble relating to some of his associates because of racial

---

[7] For activity to be protected under the opposition clause of § 2000e-3a, a plaintiff must have a good faith, objectively reasonable belief that the employer is engaging in unlawful employment practices. <u>Weeks v. Harden Mfg. Corp.</u>, 291 F.3d 1307, 1311 (11th Cir.2002). Because the issue here is whether Plaintiff even opposed an unlawful employment practice, the Court need not address the objective reasonableness of any belief held by Plaintiff.

16

bias they harbored against him." (Doc. 65 at 11 (emphasis added).) Plaintiff states that he called the area HR manager to only "<u>report</u>" the "head ni\*\*\*\* in charge" comment (<u>id.</u> (emphasis added).), and simply "<u>alerted</u>" Mr. Dorsey that nooses were found in the store (<u>id.</u> (emphasis added)). In fact, Plaintiff never even uses the word "complain" to describe his interactions with either human resources or Mr. Dorsey, or proffers that he relayed to them his opposition to an unlawful employment practice. Because there is no evidence in the record Plaintiff opposed an unlawful employment practice, Defendant is entitled to summary judgment with respect to Plaintiff's claims of retaliation.

**CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. 43) is **GRANTED IN PART** and **DENIED IN PART**. As a result, Plaintiff's claims for retaliation are **DISMISSED** and Plaintiff's claims for employment discrimination shall proceed to trial.

SO ORDERED this 28th day of September 2015.

_____
WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA